STATE OF NORTH CAROLINA, on RELATION OF THE NORTH CAROLINA MILK COMMISSION v. DOSSIE S. DAGENHARDT AND CURLEE L. DAGENHARDT, T/A FOOD LAND GROCERY STORE.

(Filed 31 January 1964.)

**1. Appeal and Error § 50—**

Upon appeal in a suit for injunction, the Supreme Court is not bound by the findings of fact of the court below and may review and weigh the evidence submitted to the hearing judge and find the facts for itself.

**2. Agriculture § 15;   Injunctions § 13—**

Where all of the evidence is to the effect that defendant retailer's acts in selling milk below cost as defined by G.S. 105-266.21 was not for the purpose of injuring, harassing, or destroying competition with other retail grocers in the vicinity as alleged in the complaint, the *prima facie* case created by the statute is rebutted and it is error for the court to continue to the hearing the temporary order restraining defendant from selling milk below cost.

**3. Injunctions § 13;   Statutes § 4—**

The constitutionality of a statute ordinarily will not be determined upon the hearing of an order to show cause, but the question of constitutionality should be determined upon the final hearing after the filing of answer when all of the facts can be shown.

RODMAN, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Copeland, S. J.,* 24 June 1963 Civil Session of FORSYTH.

Civil action to enjoin defendants, who are in the retail grocery business, from selling milk below cost for the purpose of injuring, harassing or destroying competition with other retail grocers in violation of G.S. 106-266.21, heard upon a show cause order as to why an *ex parte* temporary restraining order should not be continued until the final hearing.

At the show cause hearing plaintiff offered in evidence one affidavit,

that of Carl F. Bottoms, an employee of the North Carolina Milk Commission. His affidavit is in substance as follows: On 13 March 1963, on 21 March 1963, on 3 May 1963, and on 6 June 1963 he visited the retail grocery store operated by defendants in Winston-Salem, and on each occasion found that half gallons of Sealtest milk were advertised for sale at 49c per half gallon plus sales tax. On 3 May 1963 and on 6 June 1963 he purchased a one-half gallon container of Sealtest milk, Grade A, in their store for 49c plus sales tax. He is familiar with the wholesale cost of one-half gallons of milk in Winston-Salem and knows that the actual cost thereof to defendants was 49c per half gallon.

Defendants offered in evidence an affidavit by Curlee L. Dagenhardt, one of the defendants, which is in substance as follows: Retail grocerymen cannot handle milk at any sort of reasonable profit in competition with the wholesalers, whose retail service includes deliveries to refrigerators of consumers at 55c per half gallon. For these defendants to sell milk at 49c per half gallon is not against the public interest.

Defendants further introduced in evidence two affidavits by fourteen people engaged in the retail grocery business in the Winston-Salem area, which are *ipsissimis verbis,* and are in substance as follows: Every person engaged in the retail grocery business in the Winston-Salem area knows that when a retail grocer in that area sells milk at 49c per half gallon plus sales tax, it is not for the purpose of injuring, harassing, or destroying competition among people engaged in the retail grocery business. The only persons adversely affected in any way by a retail grocer selling half gallons of milk for 49c plus sales tax are the wholesalers of milk who are dealing with the retail trade.

The court in its order found facts substantially as follows: Defendants are engaged in the retail grocery business. On 3 May 1963 and 6 June 1963 defendants in their store sold to the public half gallons of milk for the price of 49c per half gallon plus sales tax, which was below cost as that term is defined in G.S. 106-266.21. Defendants' sale of milk at that price was for the purpose of injuring, harassing or destroying competition, to wit, with other retail grocers in Winston-Salem and its vicinity. That unless restrained defendants will continue selling milk below cost as that term is defined in the statute, in violation of G.S. 106-266.21, and it is necessary in order to protect the public interest and to prevent further violations of G.S. 106-266.21 by defendants that the *ex parte* restraining order heretofore issued be continued until the final hearing. Whereupon, the court, based upon its findings of fact, entered an order continuing the restraining order until the final hearing.

Defendants excepted to the order and appeal.

*Hayes and Hayes by John M. Hayes, Jr., for defendant appellants.*

*Holding, Harris, Poe & Cheshire by Charles Aycock Poe and Womble, Carlyle, Sandridge & Rice by William F. Womble for plaintiff appellee.*

PARKER, J.  Defendants assign as error the court's finding of fact to the effect that defendants' sales of milk on the dates specified in its order below cost was for the purpose of injuring, harassing or destroying competition with other retail grocers in Winston-Salem and its vicinity.

G.S. 106-266.21 provides in relevant part: "The sale of milk by any * * * retailer below cost for the purpose of injuring, harassing or destroying competition is hereby prohibited. At any hearing or trial on a complaint under this section, evidence of sale of milk by a * * * retailer below cost shall constitute *prima facie* evidence of the violation or violations alleged, and the burden of rebutting the *prima facie* case thus made, by showing that the same was justified in that it was not, in fact, made below cost or that it was not for the purpose of injuring, harassing or destroying competition, shall be upon the person charged with a violation of this section." This statute then proceeds to define the "cost" paid for Grade A or Grade I milk. It seems apparent from the evidence that defendants sold Grade A milk below "cost" as defined in G.S. 106-266.21.

G.S. 106-266.16 provides penalties for a violation of G.S. 106-266.21 by fine or imprisonment or both.

G.S. 106-266.15 provides that in the event of a violation of G.S. 106-266.21, the North Carolina Milk Commission may apply to any court of record in the State of North Carolina for relief by injunction, if necessary, to protect the public interest without being compelled to allege or prove that any adequate remedy at law does not exist.

This Court said in *Huskins v. Hospital,* 238 N.C. 357, 78 S.E. 2d 116: "On an appeal from an order granting or refusing an interlocutory injunction, the Supreme Court is not bound by the findings of fact of the judge hearing the application for the writ. It may review and weigh the evidence submitted to the hearing judge and find the facts for itself."

There is no evidence in the record to show or to permit a legitimate inference that defendants sold or offered for sale milk below cost, as the term "cost" is defined in G.S. 106-266.21, in order to lure customers in their store for the purpose of destructive competition with other retail grocers or that by such sales or offers to sell they diverted trade from a competitor in the retail grocery business, or otherwise injured a competitor in such business, other than the *prima facie* evidence created by G.S. 106-266.21.

It is true that defendants' evidence is to the effect that the only person adversely affected by their selling milk below "cost" is the whole-

saler who is dealing with the retail trade. However, the complaint alleges "that defendants' sale of milk at said price was for the purpose of injuring, harassing, or destroying competition, to wit: other retail grocers in Winston-Salem and vicinity." There is no reference at all in the complaint to wholesalers.

It is our opinion that the evidence does not support the lower court's challenged finding of fact. Reviewing and weighing the evidence, we find as a fact that defendants have rebutted the *prima facie* case created by the provisions of G.S. 106-266.21, and have shown that the sales of milk by them below cost were not for the purpose of injuring, harassing or destroying competition with other retail grocers in Winston-Salem and its vicinity, as alleged in the complaint. The order entered by the court below continuing the *ex parte* injunction theretofore issued to the final hearing was improvidently entered and is hereby ordered vacated.

Defendants contend in their brief at length that G.S. 106-266.21 is unconstitutional and that we should so declare it on this appeal. We decline to accede to their request. As a general rule, the constitutionality of a statute should not be decided on an interlocutory injunction and the complaint and affidavits and when no answer has been filed as here, but should be determined at the final hearing when all the facts can be shown. *Schloss v. Jamison,* 258 N.C. 271, 128 S.E. 2d 590; *Carbide Corp. v. Davis,* 253 N.C. 324, 116 S.E. 2d 792.

The temporary injunction issued below is
Reversed.

RODMAN, J., took no part in the consideration or decision of this case.